IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

SEVEN THOUSAND SIX HUNDRED
NINETY-SIX DOLLARS ($7,696.00)
IN UNITED STATES CURRENCY,

        Defendant,

And Concerning

LASHAUN MAURICE PERRY,

        Claimant.

No. C12-0116

RULING ON MOTION FOR
SUMMARY JUDGMENT

TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.   June 12, 2012 Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.   Criminal Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   Claimed Source of the Money . . . . . . . . . . . . . . . . . . . . 4
    D.   Perry's Criminal History . . . . . . . . . . . . . . . . . . . . . . . . 8
    E.   Perry's Drug Activity in Iowa . . . . . . . . . . . . . . . . . . . . 9

IV. SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . 11

V.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 30) filed by the United States on December 30, 2013, the Response (docket number 32) filed by the Claimant on January 7, 2014, the Reply (docket number 34) filed by the United States on January 14, and the Sur-Reply (docket number 35) filed by the Claimant on January 23. Pursuant to Local Rule 7.c, the issue will be decided without oral argument.

## II. PROCEDURAL HISTORY

On November 20, 2012, the United States filed a verified complaint of forfeiture *in rem*, seeking forfeiture of $7,700 seized from the residence of Lashaun Perry on about June 12, 2012. On December 12, 2012, the United States filed an amended verified complaint, stating that the amount seized was actually $7,696.

On January 2, 2013, Claimant Lashaun Maurice Perry filed a verified claim of interest, stating that the $7,696 seized from his residence belongs to him. On January 10, 2013, Perry, who at that time was represented by attorney Gerald J. Kucera, filed a motion to dismiss claiming the complaint was not timely filed, and asked that the money be immediately released. The motion to dismiss was denied without prejudice by Chief Judge Linda R. Reade on April 30, 2013. Judge Reade concluded the complaint was timely, but ordered that it be recast to appropriately allege its timeliness. On May 10, 2013, the United States filed a second amended complaint to correct perceived deficiencies in the amended complaint. Perry filed an answer to the second amended complaint on May 21, 2013.

On July 31, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Also at that time, the case was referred to the undersigned magistrate judge for the conduct of all further proceedings in accordance with 28 U.S.C. § 636(c) and the consent of the parties. After consulting with counsel, a bench trial was scheduled for May 5, 2014.

On September 4, 2013, Mr. Kucera moved to withdraw as counsel, stating that Perry had filed a motion in a criminal action pending before the Eighth Circuit Court of Appeals, claiming Kucera had provided ineffective assistance of counsel in the criminal case. Accordingly, Mr. Kucera believed that a conflict of interest existed requiring his withdrawal. Perry did not resist Mr. Kucera's motion to withdraw, but asked that counsel be appointed to represent him or, alternatively, that he be permitted to represent himself. The Court granted Mr. Kucera's motion to withdraw, found that Perry was not entitled to court-appointed counsel, and stated that Perry may proceed *pro se*.

On December 30, 2013, the United States timely filed the instant motion for summary judgment.

## III. RELEVANT FACTS[1]

### A. June 12, 2012 Search

On June 11, 2012, a federal search warrant was issued for a residence on 5th Avenue SE in Cedar Rapids, Iowa.[2] Claimant Lashaun Maurice Perry resided at the residence. The affidavit submitted in support of the search warrant established that Perry, who was a convicted felon, was seen by law enforcement officers at his residence in possession of a firearm. When law enforcement officers executed the search warrant on June 12, they found a Smith & Wesson handgun, ammunition, and a holster.

During the search, officers also found a scale with marijuana residue, a mason jar with a baggie containing marijuana residue, and a substantial amount of cash. In Perry's bedroom, where the handgun was located, officers also found a black tennis shoe

---

[1] In considering a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. Here, Perry did not directly respond to the United States' Statement of Undisputed Facts. Accordingly, the Court accepts the allegations not responded to as undisputed. FED. R. CIV. P. 56(e).

[2] *See In the Matter of the Search of XXXX 5th Avenue SE, Cedar Rapids, Iowa*, Case Number 1:12-mj-00114-JSS (N.D. Iowa).

containing $4,000 in cash[3] and a white tennis shoe containing $3,130 in cash.[4] Officers also seized $566 from Perry's pocket, making the total amount seized $7,696. Parked at the residence was a vehicle known to be driven by Perry. After a drug dog indicated on the odor of narcotics coming from the vehicle, officers obtained a state search warrant. Inside the center console of the vehicle was a cup with two baggies of marijuana, and underneath the center console officers found three mason jars.

## B. Criminal Charges

On June 12, 2012 — the day the search warrant was executed — Perry was charged by criminal complaint with being a felon in possession of a firearm.[5] On June 20, 2012, a grand jury returned an indictment, charging Perry with the same offense.[6] Pursuant to Perry's guilty plea, he was sentenced on December 4, 2012 to 78 months' imprisonment. The judgment was affirmed on appeal by the Eighth Circuit Court of Appeals.

## C. Claimed Source of the Money

When the search was executed on June 12, 2012, Perry initially told law enforcement officers that he had no knowledge of the cash found in the shoes in his bedroom. Perry later stated that he knew about the cash and was "saving the money for his birthday."

---

[3] The black shoe had 10 $100 bills ($1,000), 8 $50 bills ($400), 119 $20 bills ($2,380), and 22 $10 bills ($220) for a total of $4,000.

[4] The white shoe had a $100 bill ($100), 7 $50 bills ($350), 127 $20 bills ($2,540), and 14 $10 bills ($140) for a total of $3,130.

[5] *See United States v. Lashaun Perry*, Case Number 1:12-mj-00117-JSS (N.D. Iowa).

[6] *See United States v. Lashaun Maurice Perry*, Case Number 1:12-cr-00050-LRR (N.D. Iowa).

On August 20, 2012, Perry served the FBI with a "claim of ownership." Perry claimed that he owned the $7,696 seized on July 12. Regarding the source of the funds, Perry stated:

> I further affirm and state that a portion of these funds was the inheritance from my father who passed away in 2011. The remainder of the funds was excess that I was using to care for my mother and by [sic] brother. Their social security disability would be in cash for both of them, and in addition, I was being compensated for providing care for my mother, and I would also cash those checks to pay for living expenses.

Claim of Ownership subscribed and sworn to by Lashaun Maurice Perry on August 20, 2012 (Government's App. at 9). On January 2, 2013 — after the United States brought the instant forfeiture action — Perry filed an identical "verified claim of interest."[7]

In response to the United States' motion for summary judgment, Perry again asserts in an unsworn document that the money came from benefits received by his mother and brother.

> Defendant has been taking care of mom and brother for 7 years and being caregiver you are in control over your clients money affairs. So if I were in possession of my mom or little brother money that don't make that money illegal, and also means that the money shouldn't have been confiscated.

Claimant's Response to Brief (docket number 32) at 1.

When Perry was deposed in relation to this case on November 12, 2013, he initially testified that "I think close to $3,000" came from his father's estate, with the remainder coming from "home care with my mom" and "I was working down at the shop." Perry also suggested that he won money gambling at a casino. Perry later clarified that he found $3,000 of his father's money when cleaning out his father's room after his father died, but Perry gave $1,000 to each of his two brothers. Accordingly, Perry apparently claims that

---

[7] *See* Verified Claim of Interest subscribed and sworn to by Lashaun Maurice Perry on January 2, 2013 (Government's App. at 10).

he inherited $1,000. Perry admitted, however, that he spent part of that amount prior to the search on June 12, 2012, although he could not say how much. When asked about the inconsistency between his testimony and his prior claims, Perry responded by saying that his lawyer filed the claim, "he didn't ask me all the questions," and "I didn't explain everything to him."[8] Perry has not offered any social security records or other documents to support his claim that the money came from benefits received by his mother and brother.

On January 4, 2011, Perry applied for benefits with the Iowa Department of Human Services. At that time Perry claimed, among other things, that he had no income and no cash.[9] Perry made a similar claim when he applied for general assistance from Linn County that fall. Rusty Goins, director of Linn County General Assistance, states in an affidavit that in applying for general assistance in September 2011, Perry swore that he had no money and no cash.

> When Mr. Perry filed for this assistance on September 14, 2011, he claimed no one else was living in the household, he had no money in a checking or savings account, owned no vehicles, had not received any lump sum payments in the last year, had no wages, no income from property, no odd jobs, no rent paid to him, no income, and no cash from family and friends. Mr. Perry listed his total income as $0.

Affidavit of Rusty Goins (Government's App. at 21-22). The application for general assistance also stated that Perry resided with his elderly mother and provided in-home care for her, but he was not eligible to get paid by DHS because of his criminal background.[10] Perry acknowledged that the information on the application was true and understood that

---

[8] Deposition of Lashaun Maurice Perry, 8:2-9 (Government's App. at 8).

[9] *See* IDHS Eligibility Document (Government's App. at 30-33).

[10] *See* Application for General Assistance (Government's App. at 24).

any willful misrepresentation of the information could result in court action against him.[11] According to Goins, a person is only eligible for benefits from General Assistance for two months a year, and the most a person can receive is $900 a year. Any rent assistance is in the form of a voucher which goes directly to the landlord. In 2006, Perry received $700 in rent assistance. In 2011, Perry received another $700 in rent assistance and $50.95 for food from General Assistance.[12]

At his deposition, Perry testified that he once won $1,500 at a casino. In support of its motion for summary judgment, the United States produced a letter from the Meskwaki Casino in Tama, Iowa, indicating that they "have no records of [Lashaun Maurice Perry] ever playing at our facility."[13] According to information received from the Riverside Casino in Riverside, Iowa, Perry wagered $2,590 in January and February 2012, resulting in a net loss to Perry of $615.[14]

In response to Perry's claim that he made part of the money "working down at the shop," the United States took the deposition of Martize Gauldin. Gauldin testified that Perry worked at the shop repairing cars for about six months in 2009. Gauldin testified, however, that when Perry's mother got sick, "[h]e told me he couldn't come in like he normally did."[15] According to Gauldin, Perry earned only a modest amount of income:

> QUESTION:     Do you have any idea in that six-month
> period Mr. Perry worked at Big Boys
> how much money he would have made?

---

[11] *See* Release of Information (Government's App. at 28).

[12] *See* itemized assistance record (Government's App. at 29).

[13] Letter from Meskwaki Casino to U.S. Attorney, dated November 25, 2013 (Government's App. at 37).

[14] Riverside Casino Patron Wager Transaction History (Government's App. at 38).

[15] Deposition of Martize Gauldin, 17:7-25 (Government's App. at 64).

ANSWER:        No.  I know for a fact like me and him
               worked at the shop, and I can't really say
               how much money he made.  I can't tell
               you that because — the reason I say that
               is because we didn't make a lot of money.
               You know, we made a couple hundred
               dollars here and there, you know, but we
               didn't make a whole lot of money. . . .

Deposition of Martize Gauldin, 19:21-20:5 (Government's App. at 64).  On one occasion,
however, Gauldin and Perry fixed a car whose engine had been ruined, and made
approximately $1,200 each.  A check with Iowa Workforce Development showed that
Perry had no reported earnings from January 1, 2010 through 2012.[16]

### D.  Perry's Criminal History

On about February 10, 1998, Perry was convicted in the Circuit Court for Cook
County, Illinois, of felony possession of controlled substances.  On about November 1,
2002, Perry was convicted in the Circuit Court for Cook County, Illinois, of felony
manufacture/delivery of between 15 and 100 grams of cocaine.

On April 12, 2005, Perry was convicted in Tama County, Iowa, of possession of
drug paraphernalia.  On September 6, 2008, Perry was charged in Linn County, Iowa,
with possession with intent to distribute crack cocaine.  According to the affidavit of
Officer John O'Brien, Perry "was found in the temporary Linn County Jail with 9 baggies
containing rocks of crack cocaine."[17]  However, "[t]his case was ultimately dismissed."
On September 16, 2008, Perry was in a traffic stop with other individuals and a baggie of
crack cocaine was located under Perry's seat.  There is no indication, however, that Perry
was charged as a result of that incident.

---

[16] Affidavit of John O'Brien at 3, ¶ 10 (Government's App. at 84).

[17] Affidavit of John O'Brien at 4, ¶ 12 (Government's App. at 85).

## E. Perry's Drug Activity in Iowa

In his deposition, Defendant denied selling any drugs since he moved to Iowa. To support its claim that the cash found in Perry's bedroom was the proceeds of drug activity, the Government submitted affidavits signed by seven persons convicted of drug offenses in federal court in the Northern District of Iowa. The witnesses implicate Perry in the sale of drugs between 2001 and 2011.[18]

- In his affidavit, J.M. states that in November 2012 he pleaded guilty to one count of conspiracy to distribute a controlled substance and one count of being a felon in possession of ammunition. He was sentenced to 188 months' imprisonment. J.M. claims that in 2001 and 2002, he rode with Perry from Chicago to Cedar Rapids on five occasions, and on each occasion Perry brought approximately nine ounces of crack cocaine back to Cedar Rapids. J.M. also asserts that he believes Perry started selling heroin in 2008 and 2009. Perry told J.M. that within the last couple of years, he was selling heroin to three people. J.M. also asserts that Perry sold a high grade of marijuana, or "Kush." J.M. purchased marijuana from Perry on a regular basis until Perry was incarcerated. According to J.M., Perry would package the marijuana in baggies and then put the baggies in jars.

- F.B. states in his affidavit that in March 2012, he pleaded guilty to one count of possession with intent to distribute marijuana near schools and one count of possession of a firearm in furtherance of a drug trafficking crime. He was subsequently sentenced to 60 months' imprisonment. According to F.B., Perry sold him marijuana around ten times between September 2011 and November 2011. The amounts ranged from a couple of ounces up to a

---

[18] The names of the affiants are shown in the unredacted affidavits filed under seal at docket number 31. Redacted affidavits — concealing the names of the affiants — are filed at docket number 30-3.

half pound of marijuana. During that time, F.B. paid Perry between $5,000 and $7,000 in cash for marijuana. F.B. also purchased ecstasy from Perry, paying around $2,000 in cash between September 2011 and November 2011.

- E.O. pleaded guilty in November 2008 to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base after having been previously convicted of a felony drug offense. He was sentenced to 168 months' imprisonment. E.O. avers that he knew Perry to be a drug dealer, and he purchased crack cocaine from Perry on at least six occasions in 2008.

- In July 2009, P.B. pleaded guilty to one count of conspiracy to distribute a controlled substance and one count of money laundering. He was subsequently sentenced to 190 months' imprisonment. In his affidavit, P.B. states that he purchased ecstasy pills from Perry and, on several occasions, purchased crack cocaine from Perry. According to P.B., he would pay Perry either $4,500 or $5,000 for nine ounces of crack cocaine, with the price depending on whether he went with Perry to Chicago to pick up the drugs. P.B. estimated that from 2004 to 2007, he paid Perry $50,000 to $60,000 in cash for crack cocaine. P.B. also purchased smaller "user" amounts of marijuana from Perry.

- E.D. pleaded guilty in October 2009 to one count of unlawful transport of firearms, and was sentenced to 210 months' imprisonment. E.D. states in his affidavit that Perry sold him crack cocaine on multiple occasions during 2005 and 2006. Perry would sell an 8-ball of crack cocaine for between $100 and $150. On at least three occasions, Perry sold E.D. a 1/4 ounce of crack cocaine for between $200 and $300. Perry also sold marijuana and pills.

- D.H. states in his affidavit that in March 2010, he pleaded guilty to one count of distributing a controlled substance near a protected location and one count of unlawful transport of firearms. He was sentenced to 210 months' imprisonment. According to D.H., he accompanied Perry on three trips to Chicago in 2004 and 2005, where Perry would obtain 18 ounces of crack cocaine and bring it back to Cedar Rapids. Perry would sell the crack cocaine an ounce at a time. D.H. also knew Perry to sell hydro and "Kush," a type of marijuana.

- In his affidavit, M.B. states that in January 2008, he pleaded guilty to one count of distribution of cocaine base after a prior conviction for a felony drug offense. He was sentenced to 119 months' imprisonment. M.B. states that Perry sold crack cocaine and marijuana in Cedar Rapids, and that M.B. purchased marijuana from Perry on at least one occasion.

In his sur-reply filed on January 23, 2014, Perry asserts that the United States "found people to make false affidavits" against him. According to Perry, "it is obvious that the affidavits are made up and that these people are saying those things to try to help themselves out of their situation."[19]

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to a material fact " 'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). In order to establish the existence

---

[19] Perry's Reply (docket number 35) at 2.

of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

The United States claims that the $7,696 seized from Perry on June 12, 2012 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).[20] The United States argues that the money constitutes proceeds from the illegal trafficking of controlled substances, and/or was used or intended to be used to facilitate the distribution of illegal controlled substances. Perry claims that the money was inherited from his father, obtained from

---

[20] Section 881(a)(6) provides for the forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

social security benefits received by his mother and brother, earned by him working on cars, and won by gambling. The United States bears the initial burden of establishing by a preponderance of the evidence that the money is substantially connected to drug activity. 18 U.S.C. § 983(c)(1). *See also United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004).

When the money was seized by law enforcement officers on June 12, 2012, they found a scale in Perry's kitchen with marijuana residue. In Perry's bedroom, where the handgun was located, officers found a mason jar with a baggie containing marijuana residue, and the substantial amount of cash found in the tennis shoes. In the vehicle parked outside, which was known to be driven by Perry, officers found a cup with two baggies of marijuana in the center console, and found three mason jars underneath the center console. In his affidavit, J.M. asserted that Perry sold a high grade of marijuana, that he purchased marijuana from Perry on a regular basis until Perry was incarcerated, and that Perry would package the marijuana in baggies and then put the baggies in jars. The evidence found by the officers during the searches on June 12, 2012 is consistent with the information provided by J.M.

In February 1998, Perry was convicted in Illinois of felony possession of controlled substances, and in November 2002 was convicted in Illinois of felony manufacture/delivery of cocaine. In April 2005, after moving to Iowa, Perry was convicted of possession of possession of drug paraphernalia. In September 2008, Perry was found in possession of nine baggies containing rocks of crack cocaine, although a charge of possession with intent to distribute crack cocaine was ultimately dismissed.

Seven persons convicted of drug offenses in the Northern District of Iowa provided affidavits describing Perry's role in drug trafficking in this area. J.M. and D.H. aver that they traveled to Chicago with Perry on numerous occasions when he would obtain crack cocaine and bring it back to Cedar Rapids. F.B. states he purchased a substantial amount of marijuana and ecstasy from Perry between September 2011 and November 2011. P.B.

asserts in his affidavit that he traveled with Perry to Chicago to pick up crack cocaine, and estimated he paid Perry $50,000 to $60,000 in cash for crack cocaine between 2004 and 2007. Other affiants stated that Perry was a drug dealer and had sold them crack cocaine, marijuana, and "pills."

Perry's story regarding the source of the seized money has evolved over time. When the search was executed on June 12, 2012, Perry initially told law enforcement officers that he had no knowledge of the cash found in the shoes in his bedroom. Perry later stated that he knew about the cash and was "saving the money for his birthday." After meeting with an attorney, Perry served the FBI with a "claim of ownership," stating that a "portion" of the money was inherited from his father and the "remainder" came from social security benefits received by his mother and brother. When he filed a verified claim more than four months later, he made the same allegation. During his deposition, however, Perry testified that he only inherited $1,000 from his father in 2011, and some of that amount was spent prior to the search in June 2012. Perry continues to assert that he was "in possession of my mom or little brother's money," but he has failed to provide any records, documents, or other evidence regarding social security benefits received by his mother or brother.[21]

At his deposition, Perry claimed that the money also came from working "at the shop" and that he had won $1,500 gambling. Again, Perry offered no proof in that regard. Instead, the Government established through its deposition of Martize Gauldin that Perry worked at the shop for about six months in 2009, earning a few thousand dollars. Perry had no reported earnings in 2010, 2011, or 2012. Furthermore, one nearby casino reported that it had no record of Perry playing at its facility, while another nearby casino

---

[21] Perry did not respond to the United States' request for production of documents (Government's App. at 11-14) and did not return the consent for release of information from the Social Security Administration, as requested by the United States (Government's App. at 15-19).

14

reported that Perry wagered $2,590 in January and February of 2012, resulting in a net loss to Perry of $615.

In January 2011, when applying for benefits with the Iowa Department of Human Services, Perry reported that he had no income and no cash. In September 2011, when applying for benefits from Linn County General Assistance, Perry again represented that he had no wages and no cash. Nine months later, however, officers found nearly $7,000 in small bills on Perry's person and hidden in his shoes. It is not credible to believe that Perry saved that amount during that time from social security benefits which he allegedly obtained from his mother and brother.

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), "the burden of proof is on the government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." *United States v. Real Property Located at 3234 Washington Avenue North*, 480 F.3d 841, 843 (8th Cir. 2007). *See also United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 825 (8th Cir. 2006). The Court concludes the United States has met its burden here. Perry has a history of drug activity, including a felony conviction in Illinois for manufacture/delivery of cocaine. Seven witnesses submitted affidavits describing Perry's continued drug activity since moving to Iowa. During the search on June 12, 2012, officers found a scale with marijuana residue, which is consistent with the delivery of marijuana. Marijuana residue was found in a mason jar in Perry's bedroom, and additional marijuana and mason jars were found in the vehicle used by Perry. According to J.M., Perry would package the marijuana in baggies and then put the baggies in jars. When initially asked about the money by law enforcement on June 12, Perry claimed he had no knowledge of the cash. Perry subsequently claimed ownership of the money, stating that a portion came from an inheritance from his father and the remainder came from social security benefits received by his mother and brother. Perry admits, however, that less than $1,000 of the money seized on June 12 was inherited from his father, and he offered no evidence to support his claim that he obtained social

security benefits paid for his mother and brother. In fact, Perry resisted the United States' attempts to obtain documentation to support or refute that claim. At his deposition, Perry claimed that some of the money was earned or won by gambling. The evidence established, however, that Perry earned a few thousand dollars approximately three years earlier while working on cars, and lost money gambling at a nearby casino. In short, the Court finds by a preponderance of the evidence that the money seized from Perry on June 12, 2012 was substantially connected to drug trafficking. Accordingly, the Government's motion for summary judgment will be granted.

## VI. ORDER

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (docket number 30) filed by the United States is **GRANTED**. The Defendant property ($7,696.00) shall be forfeited to the United States of America for appropriate disposition pursuant to the Civil Asset Forfeiture Reform Act of 2000.[22]

DATED this 29th day of January, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[22] The Government's Motion for Status Conference (docket number 36) is **DENIED as moot**.